**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| **ex rel. GARY HENRY,** | ) | |
| | ) | |
| **Petitioner,** | ) | **No. 09 C 6000** |
| | ) | |
| **v.** | ) | **Judge Ronald A. Guzmán** |
| | ) | |
| **LEE RYKER, Warden,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Gary Henry has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 to vacate his convictions for murder and armed robbery. For the reasons provided in this Memorandum Opinion and Order, the Court denies the petition.

**<u>Facts</u>**

In October 1990, Henry was arrested for the murder of Juan Magallenes and the armed robbery of Magallenes and his girlfriend Irma Gutierrez. (Gov't Ex. A, *People v. Henry,* No. 1-93-2506, slip op. at 2 (Ill. App. Ct. Aug. 22, 1995).) From that time, until he ran out of money in July 1991, Henry was represented by private counsel. (*Id.*)

Thereafter, Henry requested that an assistant public defender ("PD") be appointed to represent him. (*Id.* 3.) The PD's office, which was already representing Henry's co-defendants Willie Reaves, Christopher Askew and D'Nardo Mack, said it could not represent Henry because of the potential for conflicts of interest. (*Id.* 4.) Accordingly, the court appointed private counsel to represent him. (*Id.*)

On September 23, 1992, private counsel moved to withdraw, citing a "breakdown of the attorney-client relationship." (*See* Gov't Ex. J, 9/23/92 Hr'g Tr. 3.) Thereafter, at Henry's request, the court appointed a PD to represent him. (*Id.* 4.)

A week later, Henry asked that another private attorney be appointed to represent him. (*See* Gov't Ex. K, 10/6/92 Hr'g Tr. 3.) The court denied the request and told Henry his options were to: (1) keep the PD that the court had appointed; (2) hire his own lawyer; or (3) represent himself. (*Id.* 4-5.) Henry chose the first option. (*Id.* 9.)

At a hearing in March 1993, Henry asked the trial judge to recuse himself, saying:

> [O]ver the past 2 years you have developed a personal attitude [sic] bias toward me in this case. Your judgment is no longer neutral and untainted as it should be. Your [sic] subconscious there is psychological prejudice against me. . . . All your actions, decisions show your biased rulings.
>
> . . . .
>
> I do believe that you are an agent of the State, working with the State, the police, both the State witnesses and my Counsel to obtain conviction of me by any means necessary regardless of my innocence.

(*See* Gov't Ex. M, 3/31/93 Hr'g Tr. 3, 5.) The court denied the motion. (*Id.* 8.)

In April 1993, Henry again objected to being represented by the PD. (*See* Gov't Ex. N, 4/8/93 Hr'g Tr. 3.) The court again told him that his only other choices were to hire his own lawyer or represent himself. (*Id.* 4.)

On May 5, 1993, Henry's PD, Marc Blesoff, told the court that Henry had filed a complaint against him with the Illinois Attorney Registration and Disciplinary Commission ("ARDC"). (Gov't Ex. P, 5/5/93 Hr'g Tr. 3.) Given the potential conflict the filing created, the PD asked for leave to withdraw. (Gov't Ex. Q, 5/17/93 Hr'g Tr. 3-5.) The judge denied the motion, and Henry agreed to the PD's representation. (*Id.*)

Subsequently, Henry was tried and convicted of first degree murder and armed robbery. (Gov't Ex. A, *People v. Henry,* No. 1-93-2506, slip op. at 1 (Ill. App. Ct. Aug. 22, 1995).) Thereafter, he filed a pro se motion for a new trial, but the court did not rule on it. (*See id.* at 28-30.)

Thereafter, Henry filed an appeal arguing, among other things, that his right to effective counsel was violated when the court refused to allow the PD to withdraw and failed to address the ineffectiveness issues he raised in his motion for a new trial. (Gov't Ex. T, Br. & Arg. Def.-Appellant 2.) The appellate court remanded the case for consideration of these two issues but rejected all of Henry's other claims. (Gov't Ex. A, *People v. Henry,* No. 1-93-2506, slip op. at 30 (Ill. App. Ct. Aug. 22, 1995).) Henry's subsequent petition for leave to appeal to the Illinois Supreme Court was denied. *See People v. Henry*, 660 N.E.2d 1275 (Ill. 1995) (Table).

On remand, the trial court held hearings on the motions to withdraw and for a new trial. At the former hearing, Henry's PD testified that he gave Henry "effective . . . , strenuous representation" despite "his knowledge of [the] pending ARDC complaint." (Gov't Ex. Y, 5/18/04 Hr'g Tr. 22.) At the latter hearing, the court evaluated the PD's conduct, in light of the evidence presented at trial, as to each of Henry's claims of ineffectiveness. (*See generally* Gov't Ex. Z, 6/22/06 Hr'g Tr.) Based on the evidence and arguments presented at the hearings, the court denied both motions. (Gov't Ex. Y, 5/18/04 Hr'g Tr. 38-39; Gov't Ex. AA, 7/5/06 Hr'g Tr. 22-28.)

Henry appealed, arguing that the trial court: (1) wrongly held that his right to effective counsel was not violated by a conflict of interest; (2) violated Henry's due process rights by refusing to assign his recusal motion to another judge; and (3) made a variety of erroneous rulings and procedural errors during the remand proceedings that, cumulatively, deprived him of due process; (4) wrongly concluded that Henry's right to effective representation was not violated by his counsel's failure to: (a) object to the state's use of an undisclosed rebuttal witness; (b) prosecute sufficiently a motion to quash Henry's arrest; (c) request that jurors be questioned about gangs during voir dire;

(d) tell Henry that certain post-arrest statements could not be used to impeach him; (e) impeach Gutierrez and Mack; (f) obtain the photos the police used to obtain witness identifications; (g) investigate witnesses that Henry said would support his alibi and mistaken identity defenses; (h) prevent the introduction of evidence that a co-defendant was seen with a gun four days before the crimes; (i) pursue the state's *Brady* violations; and (j) investigate allegations that prosecutors intimidated witnesses. (*See generally* Gov't Ex. BB, Br. & Arg. Def.-Appellant.) The appellate court affirmed the trial court's rulings. (Gov't Ex. EE, *People v. Henry,* No. 1-06-2057, slip op. at 25-26 (Ill. App. Ct. Apr. 18, 2008).)

Henry raised all of these claims in his subsequent petition for leave to appeal to the supreme court, with one modification: he argued that the appellate court's failure to rule on issues relating to the recusal motion violated state, not federal, law. (*See* Gov't Ex. FF, Pet. Leave Appeal.) The supreme court denied his petition. *See People v. Henry*, 897 N.E.2d 258 (Ill. 2008) (Table).

### Discussion

In his habeas petition, Henry claims that the appellate court's: (1) failure to rule on issues relating to the recusal motion violated his Fourteenth Amendment rights; (2) ruling on the new trial motion violated his Sixth Amendment rights because Blesoff (a) had a conflict of interest; (b) did not investigate the government's rebuttal witness; (b) failed to tell Henry that his post-arrest statements could not be used to impeach him; (c) did not impeach Gutierrez and Mack; (d) failed to get the photos used by the police; (e) did not investigate the unidentified informant on which the police relied whose existence the state belatedly disclosed; and (f) failed to ask the court to voir dire the jurors about gangs.

The Court can reach the merits of these claims only if they allege violations of federal law and Henry gave the state court a fair opportunity to resolve them. *Kurzawa v. Jordan*, 146 F.3d 435,

440-41 (7th Cir. 1998). These claims were fairly presented if Henry relied on federal or state cases containing appropriate constitutional analysis, asserted the claim "in terms so particular as to call to mind a specific constitutional right"or "allege[d] a pattern of facts . . . well within the mainstream of constitutional litigation." *Id.* at 441 (quotation omitted). In his second petition for leave to appeal to the supreme court, Henry did not argue that the appellate court's failure to rule on recusal issues violated his federal constitutional rights. Rather, he framed this claim as an issue of state law. (*See* Gov't Ex. FF, Pet. Leave Appeal 8-10.) Because Henry did not fairly present his Fourteenth Amendment claim to the state court, it cannot be the basis for habeas relief.

Henry is entitled to a writ of habeas corpus on his remaining claims only if he demonstrates that the state court's decision with respect to them was "contrary to . . . clearly established Federal law," involved "an unreasonable application of" that law, or "was based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d)(1)-(2). A decision is "contrary to" clearly established federal law if it "contradicts the governing law of the U.S. Supreme Court" or "on a set of facts materially indistinguishable from those at issue in the applicable Supreme Court precedent, reache[s] a different result." *Ward v. Sternes,* 334 F.3d 696, 703 (7th Cir. 2003). A state court unreasonably applies federal law if it "correctly identifie[s] the governing Supreme Court precedent, but unreasonably applie[s] it to the unique facts of the prisoner's case." *Id.* A decision is based on an unreasonable determination of the facts, "[i]f the petitioner can show that the state court determined the underlying factual issue against the clear and convincing weight of the evidence." *Id.* at 704; *see* 28 U.S.C. § 2254(e)(1) ("[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

Among other things, the Sixth Amendment provides the right to conflict-free representation. *Hall v. United States*, 371 F.3d 969, 973 (7th Cir. 2004). However, that right is violated only if there

was an actual conflict of interest that adversely affected counsel's performance.  *Id.*; *see Strickland v. Washington*, 466 U.S. 668, 688 (1984).  With respect to this issue, the state court said:

> The sixth amendment right to effective assistance of counsel includes the right to have the undivided loyalty of counsel, free from any conflicts.  *Strickland v. Washington*, 466 U.S. 668, 688, 80 L. Ed. 674, 104 S. Ct. 2052 (1984). . . .
>
> . . . .
>
> . . . . The trial court knew about the allegations in the ARDC complaint.  He presided over all pretrial proceedings as well as the trial itself.  He conducted the inquiry of [PD] Blesoff on remand.  During the inquiry, Blesoff unequivocally stated that the complaint did not affect his ability to provide conflict-free representation.  Under the circumstances, the trial court's decision . . . that no actual conflict existed was not palpably erroneous or manifestly unjust.

(Gov't Ex. EE, *People v. Henry,* No. 1-06-2057, slip op. at 9-10 (Ill. App. Ct. Apr. 18, 2008).)

Because the court used the proper legal standard and applied it reasonably to the facts of this case, Henry's Sixth Amendment conflict-of-interest claim fails.

To prevail on his remaining Sixth Amendment claims, Henry must show that Blesoff performed unreasonably, Henry was prejudiced as a result, and the state court's conclusion to the contrary is unreasonable.  *Knowles v. Mirzayance,* 129 S. Ct. 1411, 1420 (2009).  In determining an ineffective assistance claim, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 689.  With respect to Henry's claim that Blesoff unreasonably failed to investigate the government's rebuttal witness, the state court said:

> At trial, defendant's sister testified that on the night of the murder defendant was staying at her house because she was working.  The rebuttal witness[, the sister's employer,] testified that records indicated that [she] did not work the night of the murder.  Defendant claims that Blesoff should have objected to the rebuttal witness.
>
> . . . .
>
> Here, the State . . . kn[e]w . . . it would need to call the sister's supervisor . . . . [o]nly after [she] testified that she was at work . . . .  The record indicates that upon realizing that the supervisor would testify, the State informed Blesoff.  Thus, Blesoff could not

have objected to this witness because there was no meritorious basis upon which to object.  Likewise, Blesoff was not deficient in failing to recall the sister on surrebuttal because the sister could not have contradicted the supervisor regarding the employer's time records.

The decision to call witnesses is trial strategy, which is generally not grounds for an ineffectiveness claim.  *People v. Simmons*, 342 Ill. App. 3d 185, 191, 794 N.E.2d 995 (2003).  Blesoff could have decided not to call the sister in surrebuttal because of her unconvincing performance on the stand during defendant's case.  As a result, his performance was not deficient.

(Gov't Ex. EE, *People v. Henry,* No. 1-06-2057, slip op. at 17-18 (Ill. App. Ct. Apr. 18, 2008).)  The court applied the proper legal standard, an Illinois case based on the principles in *Strickland*, and applied them reasonably to the facts before it.  *See People v. Simmons*, 794 N.E.2d 995, 1001 (Ill. App. Ct. 2003) (citing *People v. Pecoraro*, 677 N.E.2d 875, 887-88 (Ill. 1997) (citing *Strickland*)).  Thus, Henry is not entitled to habeas relief on this claim.

Henry's next claim is that his counsel incorrectly told him that his post-arrest statements could be used to impeach him if he testified.  Because the trial court had suppressed his post-arrest statements, Henry says, his counsel's advice unreasonably deprived him of the right to testify.

The state court, however, found that only some of Henry's statements had been suppressed.  (Gov't Ex. EE, *People v. Henry,* No. 1-06-2057, slip op. at 19-20 (Ill. App. Ct. Apr. 18, 2008).)  That finding, which Henry has not rebutted, is presumed to be correct.  *See* 28 U.S.C. § 2254(e)(1) ("[A] determination of a factual issue made by a State court shall be presumed to be correct" unless the petitioner rebuts the presumption "by clear and convincing evidence").  Given that finding, the court reasonably concluded that Blesoff's advice was appropriate and rejected this ineffective assistance claim.  (Gov't Ex. EE, *People v. Henry,* No. 1-06-2057, slip op. at 19-20 (Ill. App. Ct. Apr. 18, 2008).)

Henry fares no better with his claim that Blesoff unreasonably failed to impeach Gutierrez.  With respect to this claim, the state court said:

> Defendant claims that Blesoff was ineffective for failing to properly impeach Irma Gutierrez on her previous testimony that the "police or somebody" told her that she made a mistake in the first line-up. However, the record indicates that trial counsel did impeach Irma regarding her prior testimony that someone told her at a previous line-up she misidentified somebody as being one of defendant's confederates. In fact, Irma admitted on cross-examination that she made this statement in a prior proceeding. We are not sure how trial counsel could have more effectively impeached Irma regarding her previous testimony.

(*Id.* at 20-21.) The court's rejection of this claim, which is based on its unrebutted finding that Blesoff had ably impeached Gutierrez, passes muster under habeas review.

Henry also claims that Blesoff inadequately impeached Henry's co-defendant Mack. The trial transcript shows, however, that during cross-examination Blesoff established that Mack: (1) had previously committed an armed robbery and lied to police about it to avoid being charged; (2) knew that being convicted for both first degree murder and armed robbery could result in a sentence of up to 160 years in prison; (3) knew that if he had been charged as the shooter in this crime he would have been eligible for life in prison or the death penalty; (4) struck a deal with the government to testify against Henry in exchange for a sentencing recommendation of twelve years; (5) before he struck that deal he signed an affidavit recanting the statement he made to the police implicating his co-defendants; and (6) he had only known Henry for a month before the crimes were committed. (*See* Gov't Ex. S, Trial Tr. at P196-238.) The appellate court reasonably concluded that Blesoff's failure to question Mack about a "small discrepancy," the "obvious" foundation for certain testimony, and an evidentiary issue on which Mack could only speculate did not make this impeachment constitutionally deficient. (Gov't Ex. EE, *People v. Henry,* No. 1-06-2057, slip op. at 22-23 (Ill. App. Ct. Apr. 18, 2008).)

Henry also contends that Blesoff's failure to get photos used by the police constituted ineffective assistance. About this claim, the appellate court said:

> Defendant's second claim is that Blesoff was ineffective for failing to raise the State's failure to provide Polaroid pictures and a photo array in a timely manner. The record

> indicates that the State did tender the Polaroid pictures and photo array more than two months before trial. Defendant admits as much in his reply brief, but contends that there is no record Blesoff ever received such photos. Defendant never suggests how these photos prejudiced his trial. Therefore, we find that Blesoff was not ineffective on this matter either.

(*Id.* at 24-25.) Given the court's unrefuted finding that the photos were timely provided, its conclusion on this issue is sound.

Henry's next contention is that his counsel should have investigated the unidentified informant on whom the police relied and whose existence the State did not timely disclose to bolster the motion to quash Henry's arrest. The state court rejected this claim, saying:

> Here, the informant implicated Mack and Dameron [, Mack's accomplice in previous armed robbery]. There was no mention of defendant. Likewise, Dameron implicated defendant's three confederates, but made no mention of defendant. It was not until the police spoke to Mack that defendant was mentioned in connection with the crime. Clearly, the informant was not disclosed by the State because the informant did not implicate or even mention defendant at any time. . . . Therefore, there was no reason for the State to tender the informant to the defense because the informant's statement implicating Mack and Dameron would have no impact on defendant's case. As a result, Blesoff's failure to investigate this matter was not deficient.

(*Id.* at 24.) Again, the court reasonably applied *Strickland* to its unrefuted finding that the informant had not implicated defendant, and thus, that Blesoff's failure to investigate the informant did not render him ineffective.

Henry's last claim is that Blesoff unreasonably failed to ask the court to voir dire the jurors about gangs. Rejecting this claim, the state court said:

> Defendant's fourth argument is that Blesoff was ineffective for failing to request additional questions about gangs during voir dire when he should have known that gang issues would be involved in the trial. Counsel's conduct during voir dire generally involves matters of trial strategy. *People v. Lopez*, 371 Ill. App. 3d 920, 921, 864 N.E.2d 726 (2007). This was not a case about gangs merely because defendant was an alleged gang member. The crime committed had nothing to do with gang activity or gang involvement, and testimony regarding gangs was not integral to the case. As a result, defendant has failed to demonstrate that Blesoff's failure to include questions abut gangs during voir dire was deficient.

(*Id.* at 19.)  Again, though the court cited an Illinois case, the proposition for which it stands is the same under federal law.  *See, e.g., Seigfried v. Greer*, 372 Fed. Appx. 536, 540 (5th Cir. 2010) ("Generally, an attorney's actions during voir dire are considered to be a matter of trial strategy." (quotation omitted)).

### Conclusion

For the foregoing reasons, the Court denies Henry's petition for a writ of habeas corpus [doc. no. 1] and terminates this case.

**SO ORDERED.**                                      **ENTERED:**

**January 6, 2011**

_____

**HON. RONALD A. GUZMAN**
**United States District Judge**